**IT IS ORDERED as set forth below:**

**Date: March 31, 2020**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>ELLERY MYRON STEED,<br><br>        Debtor. | CASE NO. 18-69488-JWC<br>CHAPTER 13 |
| ELLERY STEED,<br><br>      Plaintiff,<br><br>v.<br><br>GSRAN-Z, LLC, and INVESTA<br>SERVICES, LLC,<br><br>      Defendants. | ADVERSARY PROCEEDING<br>NO. 19-5201-JWC |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on several motions filed by the parties in the above-caption adversary proceeding:  1) *Plaintiff's Motion for Partial Summary Judgment Against GSRAN-Z, LLC, and Investa Services, LLC* (Doc. No. 14) ("Plaintiff's Motion for Summary Judgment") filed by Plaintiff Ellery Steed ("Plaintiff" or "Debtor"); 2) *Defendants GSRAN-Z, LLC*

Case 19-05201-jwc    Doc 38    Filed 04/01/20    Entered 04/01/20 15:34:17    Desc Main
Document    Page 2 of 25

*and Investa Services, LLC's Motion for Summary Judgment and Brief in Support Thereof* (Doc. No. 28) ("Defendants' Motion for Summary Judgment") filed by GSRAN-Z, LLC ("GSRAN-Z") and Investa Services, LLC ("Investa," and together with GSRAN-Z, "Defendants"); 3) *Plaintiff's Request for Oral Hearing and Argument on Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment* (Doc. No. 31) (the "Request for Oral Argument"); and 4) *Defendants' Motion to Strike Plaintiff's Reply to Defendants' Response to His Motion for Summary Judgment* (Doc. No. 35) (the "Motion to Strike").

The adversary proceeding arises out of the Chapter 13 bankruptcy case filed by Plaintiff on November 19, 2018, Case No. 18-69488-jwc (the "Bankruptcy Case"). Plaintiff filed this adversary proceeding against Defendants on April 30, 2019, seeking damages for alleged violations of the automatic stay under 11 U.S.C. § 362(a)[1] and related alleged violations of the Fair Debt Collection Practices Act (the "FDCPA") and state law negligence claims.

Plaintiff filed his Motion for Summary Judgment on August 29, 2019, seeking summary judgment against Defendants in the amount of $24,000 for economic damages, $100,000 for mental anguish and distress, and $250,000 for punitive damages for Defendants' alleged violations of the automatic stay. Plaintiff has not moved for summary judgment on his FDCPA and state law negligence claims. Plaintiff filed a Statement of Undisputed Material Facts in Support of Partial Summary Judgment (Doc. No. 15) attaching various exhibits ("Plaintiff's Statement of Facts").

On October 21, 2019, Defendants filed their Motion for Summary Judgment seeking judgment in their favor on all counts and a Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment and in Response to Plaintiff's Motion for Partial

---

[1] All statutory references are to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) unless otherwise specified.

Summary Judgment (Doc. No. 29) ("Defendants' Statement of Facts").[2]   The same day, Defendants also filed a Joint Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 30) (the "Joint Response") and Response to Plaintiff's Statement of Undisputed Material Facts in Support of Partial Summary Judgment ("Defendants' Counterstatement").

On October 30, 2019, Plaintiff filed his Reply to Defendants' Response to His Motion for Summary Judgment and Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. No. 32) (the "Reply").  Defendants' filed their Joint Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment on November 13, 2019 (Doc. No. 37).

Plaintiff filed his Request for Oral Argument on the motions for summary judgment on October 30, 2019 (Doc. No. 31).  Defendants' filed a response in opposition to the Request for Oral Argument on November 4, 2019 (Doc. No. 33).

Defendants filed the Motion to Strike on November 6, 2019, requesting that Plaintiff's Reply be stricken because it exceeds the 15-page limit prescribed by BLR 7007-1(e).  Plaintiff filed his Response to Defendants' Motion to Strike on November 12, 2019, asserting that because he combined his Reply in support of Plaintiff's Motion for Summary Judgment with his response to Defendants' Motion for Summary Judgment and utilized only 25 pages for both briefs, the Motion to Strike should be denied.

For the reasons set forth below, the Request for Oral Argument and Motion to Strike will be denied and both Motions for Summary Judgment will be granted in part and denied in part. Plaintiff's Motion for Summary Judgment will be granted as to liability against Investa on his claims for willful violation of the automatic stay, denied as to liability against GSRAN-Z, and

---

[2] Defendants also filed on October 21, 2019 a "Notice of Filing Original Transcript of Ellery Steed," which purports to attach the deposition transcript of Plaintiff along with certain exhibits.  The Notice of Filing filed on the Court's docket, however, does not include any transcript or exhibits.

denied as to damages against both Defendants.  Defendants' Motion for Summary Judgment will

be granted as to the FDCPA claims and denied as to all other issues.

## I.    <u>JURISDICTION</u>

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334.[3]  Determination of

whether a creditor has violated the automatic stay is a core matter pursuant to 28 U.S.C. §

157(b)(2)(A).  Venue is proper pursuant to 28 U.S.C. § 1409.

## II.    <u>PROCEDURAL MATTERS</u>

The Court first considers the procedural motions, *i.e.*, the Request for Oral Argument and

the Motion to Strike.  BLR 7056(c) provides that "[a] motion for summary judgment will be

decided without a hearing unless the Bankruptcy Court directs otherwise."  Plaintiff argues that a

hearing is needed "in part to prevent inherent prejudice" from exhibits attached by Defendants in

support of their Motion for Summary Judgment and opposition to Plaintiff's Motion for Summary

Judgment.  Plaintiff states that "because Plaintiff's briefing is completed as to both motions, the

only opportunity for clarification . . . is through oral argument."  Plaintiff, however, filed his Reply

after Defendants filed their Motion for Summary Judgment, Joint Response, Statement of Facts,

and exhibits.  Plaintiff had the opportunity to address any exhibits filed by Defendants at the time

he filed his Reply and indeed raised various objections to exhibits attached to Defendants' papers.

The Court is not aware of any exhibits filed by Defendants after Plaintiff's Reply.  Further, the

Court has not considered any exhibits Defendants failed to attach to their pleadings.  Defendants

oppose the Request for Oral Argument, and the Court does not believe oral argument will assist it

---

[3] Although the Court dismissed Plaintiff's underlying Bankruptcy Case on December 6, 2019, Defendants have not moved to dismiss this adversary proceeding or requested that the Court abstain.  In any event, as this case asserts claims for willful violations of the automatic stay under § 362(k), the Court finds it appropriate to retain jurisdiction in this adversary proceeding.  *See In re Healthcare Real Estate Ptr's., LLC v. Summit Healthcare Reit, Inc. (In re Healthcare Real Estate Ptr's., LLC )*, 941 F.3d 64 (3d. Cir. 2019); *Johnson v. Smith (In re Smith)*, 575 F.3d 1079, 1083 (10th Cir. 2009); and *Davis v. Courington (In re Davis)*, 177 B.R. 907, 911 (9th Cir. B.A.P. 1997).

in ruling on the pending motions for summary judgment.  The Court will deny the Request for Oral Argument.

As to the Motion to Strike, the Reply is submitted as a combined response and reply to the two pending motions for summary judgment.  BLR 7007-1 allows up to 25 pages for responses, and the Reply is 25 pages in length.  The Court declines to parse the Reply to determine whether the parts of it submitted in reply to the Joint Response exceed the 15-page limit prescribed by BLR 7007-1(e).  In any event, BLR 7007-1(h) provides that the effect of non-compliance is that the Court, "in its discretion, may decline to consider any motion or brief that fails to conform to the requirements of these Rules."  The Court will consider the Reply as filed and deny the Motion to Strike.

The Court next turns to the competing motions for summary judgment.

## III.    **SUMMARY JUDGMENT**

### A.    **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure (the "Federal Rules") applies to this adversary proceeding.  Fed. R. Bankr. P. 7056.  Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918-19 (11th Cir. 1993).

A fact is material if it might affect the outcome of a proceeding under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (U.S. 1986).  A dispute of fact is genuine "if the evidence is such that a reasonable jury [or finder of fact] could return a verdict for the nonmoving party."  *Id.*

At the summary judgment stage of a proceeding, the Court's function is not to determine the truth of the matter by weighing the evidence, but rather to determine if there is a genuine issue for trial. *Id.* When making this determination, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir. 1985). "All reasonable doubts and inferences should be resolved in favor of the opponent." *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir. 1985).

The moving party bears the burden of establishing the right to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir. 1982). The moving party must identify those evidentiary materials listed in Federal Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(e).

Once the moving party makes a *prima facie* showing that it is entitled to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that there is a material issue of fact that precludes summary judgment. *Celotex*, 477 U.S. at 324; *Martin v. Commercial Union Ins. Co.*, 935 F.2d 235, 238 (11th Cir. 1991). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citations omitted).

### B. Findings of Fact

The Court finds the following material facts to be undisputed for purposes of both motions for summary judgment:

Investa, on behalf of clients such as GSRAN-Z, purchases and services thousands of writs of *fieri facias* ("fi. fa(s).") issued by the Fulton County Tax Commissioner for unpaid ad valorem taxes and solid waste bills on real property located within Fulton County, Georgia. Investa's portfolio includes several fi. fas. issued on real property located at 1517 North Ave. N.W., Atlanta, Georgia (the "Property") for unpaid taxes and solid waste bills for the years 2011-2018. Plaintiff owns the Property.

Plaintiff filed his Bankruptcy Case on November 19, 2018, scheduling both Investa and GSRAN-Z as creditors. Investa, for GSRAN-Z, filed proof of claim 1-1 and proof of claim 2-1 in the Bankruptcy Case on January 22, 2019 (the "Proofs of Claims") asserting secured claims pursuant to each fi. fa. issued on the Property and purchased by Investa. The notice address listed on the Proofs of Claims is INVESTA SERVICES FOR GSRAN-Z, LLC, 1266 West Paces Ferry Rd., Box 517, Atlanta, GA 30327.

On February 13, 2019, the Bankruptcy Case was dismissed by order of the Court (Bankruptcy Case Doc. No. 29) (the "Dismissal Order"). On February 27, 2019, while the Bankruptcy Case was still dismissed, Investa directed the Fulton County Sheriff to levy on each fi. fa.

On March 14, 2019, the Court entered an order vacating its previous order dismissing the Bankruptcy Case (Bankruptcy Case Doc. No. 34) (the "Reinstatement Order"). On March 16, 2019, the Clerk of the Court filed a certificate of service certifying that the Reinstatement Order was served on, among others, the following recipients at the indicated addresses:

> GSRAN-Z Servicing Acct.
> P.O. Box 71275
> Philadelphia, PA 19176-6275

INVESTA SERVICES FOR GSRAN-Z, LLC,
1266 WEST PACES FERRY RD, BOX 517,
ATLANTA, GA 30327-2306

Investa Services, LLC
1266 West Paces Ferry Road #517
Atlanta, GA 30327-2306

Investa Services, LLC
1737 Ellsworth Industrial Blvd, Building G
Atlanta, GA 30318-3737

(Bankruptcy Case Doc. No. 36).  Investa and GSRAN-Z actually received the Reinstatement Order

via mail at some point, though the exact date each entity received the Reinstatement Order is not

clear from the record before the Court.

On April 11, 2019, the Fulton County Sheriff posted a notice dated April 8, 2019 at the

Property, which gave notice that the Property would be sold at an auction to be held June 4, 2019

for unpaid taxes (the "First Notice").  Plaintiff called the Fulton County Sheriff's Department to

explain that the automatic stay applied to the Property but was instructed to contact "Ms. King" at

Investa's office, was given Ms. King's number, and advised that Ms. King had to give the

instruction to the Sheriff to stop the collection efforts and to remove the Property from the

scheduled sale.[4]  Plaintiff attempted to contact Ms. King but was not able to reach her for several

days.  Plaintiff talked with Ms. King on April 16, 2019[5] and explained that the Bankruptcy Case

prevented any collection efforts.  Ms. King indicated that the Bankruptcy Case had been dismissed,

---

[4] The facts in this sentence, the rest of this paragraph, and the following paragraph are taken from Plaintiff's Statement of Facts, ¶¶ 11 - 17, which cite to the Declaration of Ellery Steed attached to the Statement of Facts. Defendants do not dispute these paragraphs of Plaintiff's Statement of Facts or challenge their admissibility. Defendants' only objection to these statements (and many others) is that they are not material to Plaintiff's claims. The Court disagrees that these facts are not material and considers them undisputed for purposes of the Summary Judgment Motions.

[5] Defendants agree that Plaintiff had a phone conversation with Ms. King on April 16, 2019, though Defendants deny any knowledge of the contents of the conversation.  Again, however, Defendants do not refute Plaintiff's Statement of Facts regarding the substance of this conversation and again argue only that the substance of the call is irrelevant.  As shown by the analysis below, the Court disagrees that the substance of the call is irrelevant.

and Plaintiff explained that it had been reinstated.

On April 23, 2019, Plaintiff found two additional delinquency notices sent from the Fulton County Sheriff's Department at the Property (the "Second Notices"). Both notices were dated April 19, 2019, were addressed to RESIDENT/TENANT/OCCUPANT, and gave notice to Plaintiff that the Property would be advertised for sale if the unpaid taxes were not paid within 20 days. Plaintiff again called the Sheriff's Department but was again instructed that the Sheriff's Department had not received instruction from Investa to halt collection efforts.

A tax foreclosure sale on the Property scheduled for June 4, 2019 was advertised in the Daily Report during the month of May, 2019 (the "May Advertisement").

While it is not clear from the record when the tax foreclosure was finally canceled or who took steps to cancel it, the scheduled foreclosure sale did not take place as Plaintiff still owns the Property. Other than the First Notice, Second Notices, and May Advertisement, Plaintiff has neither alleged nor provided any evidence of additional collection efforts by Defendants that allegedly violated the automatic stay.

### C.  Plaintiff's Motion for Summary Judgment

Plaintiff argues that he is entitled to summary judgment on his claim for willful violation of the automatic stay against both Defendants for their failure to stop the First Notice, Second Notices, and May Advertisement and that he is entitled to damages totaling $374,000. Defendants argue that Plaintiff has not established that they violated the automatic stay at all and that, even if they did, Plaintiff has not established any damages.

To establish a willful violation of the automatic stay, Plaintiff must show a stay violation occurred and that Defendants "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay." *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996).

"The defendant must have actual notice of the stay for the violation to be willful."  *Roche v. Pep Boys, Inc. (In re Roche)*, 361 B.R. 615, 622 (Bankr. N.D. Ga. 2005).  "[P]roof of the defendant's intent to violate the stay is not required, only the defendant's intent to act must be shown.  This intent to act can be shown where the defendant, after notice, fails to affirmatively halt actions that will violate the stay."  *Id.*  "[O]nce the moving party makes a *prima facie* showing that the court order was violated, the burden of production shifts to the alleged contemnor to show a present inability to comply that goes beyond a mere assertion of inability."  *Jove,* 92 F.3d at 1556.

1. Defendants Did Not Willfully Violate the Stay by Initiating the Foreclosure Process

One thing clear in this case is that initiation of the foreclosure process by Investa on February 27, 2019 was not a willful violation of the automatic stay.  The automatic stay terminated as to both the Debtor and the Property upon entry of the Dismissal Order on February 13, 2019.  *See* 11 U.S.C. § 362(c)(1) and (2) (terminating the stay as to property of estate when such property is no longer property of the estate and as to all other acts upon dismissal of a case); 11 U.S.C. § 349 (dismissal of a bankruptcy case revests property of the estate in the entity in which such property was vested immediately before the commencement of the case).  When Investa initiated the foreclosure process on February 27, no stay was in effect as to the Property or Debtor.  Investa therefore could not have committed a willful violation of the automatic stay by initiating the foreclosure process at a time when the stay was not in effect.

2. The Notices and May Advertisement Violated the Automatic Stay

It also is clear that stay violations occurred after reinstatement of Plaintiff's Bankruptcy Case.  Section 362(a) "operates as a stay, applicable to all entities, of—. . . (4) any act to create, perfect, or enforce any lien against property of the estate…."  Though the automatic stay terminated upon entry of the Dismissal Order, it was reinstated upon entry of the Reinstatement

Order. *See MERS, Inc. v. Parks (In re Parks)*, No. 04-41299-MGD, 2005 WL 6491918, *2 (Bankr. N.D. Ga. Feb. 4, 2005) ("When a case is dismissed, the automatic stay is terminated and when a case is reinstated, the automatic stay is also reinstated.").  If nothing else, the posting of the First Notice at the Property, the mailing of the Second Notices, and the May Advertisement were all acts to enforce a lien against the Property, which was property of Plaintiff's bankruptcy estate when such acts occurred.  The tacking of the First Notice, the mailing of the Second Notices, and the May Advertisement each violated the automatic stay.

### 3. Investa Had a Duty to Stop the Foreclosure Process

Having determined that the posting of the First Notice, the mailing of the Second Notices, and the May Advertisement each violated the stay, the Court next addresses Defendants' main arguments in both the Joint Response and Defendants' Motion for Summary Judgment that they did not perform any act in violation of the automatic stay because it was the Sheriff, not Defendants, that tacked the First Notice, mailed the Second Notices, and effected the May Advertisement.  Any alleged violation of the automatic stay, Defendants' argue, was done by the Sheriff and not Defendants.  Defendants further argue that Plaintiff has not established any fact showing that Defendants had a duty to stop the foreclosure process once it was initiated and even go so far as to argue that it was Plaintiff's duty to enforce the automatic stay by providing a copy of the Reinstatement Order to the Sheriff.  Plaintiff responds that Defendants did have an obligation to stop the foreclosure process.  The Court easily agrees with Plaintiff on this point, at least with respect to Investa.

Defendants' position—that they had no obligation to stop the Sheriff from proceeding with the foreclosure action—finds no support in case law or the principles underlying the purpose of the automatic stay, and Defendants do not cite a single authority supporting their position.  On the contrary, the only authority cited by Defendants relative to this point supports Plaintiff's position.

*See Mitchell Constr. Co. v. Smith (In re Smith)*, 180 B.R. 311, 319 (Bankr. N.D. Ga. 1995) ("When a creditor receives such actual notice, the burden is then on the creditor to assure that the automatic stay is not violated or, if it has been violated prior to receipt of actual notice, the burden is on the creditor to reverse any such action taken in violation of the stay.").  Numerous cases confirm that the automatic stay imposes an affirmative duty on creditors to stop collection actions they have initiated, even if third parties carry out the violative acts.  *See, e.g, In re Caffey*, 384 Fed. Appx. 882, 886 (11th Cir. 2010) (unpublished) (doubting creditor's legal position that she had no affirmative duty to delay a contempt order and arrest warrant against debtor because contempt order was issued prior to debtor's bankruptcy case); *In re Valentine*, Case No. 19-40593-705, Adv. No. 19-04022-705, 2020 WL 424570, *21 (E.D. Mo. Jan. 27, 2020) ("A creditor, who has put a collection effort into motion *must* affirmatively act to stop, stay, or hold the collection effort in abeyance or risk incurring liability once a bankruptcy commences."); *In re Banks*, 253 B.R. 25, 30 (Bankr. E.D. Mi. 2000) ("many courts have emphasized the obligation incumbent upon creditors to take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including garnishment of wages, repossession of an automobile, foreclosure of a mortgage or a judgment lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition.").

To the extent any evidence is needed to establish Defendants' duty in this case, the Court finds the undisputed evidence that Investa, as servicer for GSRAN-Z, initiated the foreclosure process satisfies Plaintiff's burden of establishing Investa's duty to stop the foreclosure process once it learned of the Reinstatement Order.  Investa did not violate the stay by initiating the foreclosure process, but it did violate the stay if it failed to take action to stop the foreclosure process after becoming aware of the Reinstatement Order.  While the record is clear that Investa

had a duty to stop the foreclosure process as the party that initiated it, the record is not clear if GSRAN-Z also had a duty to stop the foreclosure process or if it can be held responsible for the actions of Investa.  The only thing clear in the record is that Investa was the "servicer" for GSRAN-Z, but beyond that general description, the relationship between Defendants is not developed in the motions, briefs, or statements of fact and evidence before the Court.  Neither party includes any discussion in their briefs regarding the liability of GSRAN-Z specifically, whether such liability would be independent of Investa's liability, or whether such liability would arise from the principles of agency or similar doctrines.  Because it is not clear in the record whether GSRAN-Z had a duty to stop the foreclosure because of the actions of Investa or whether GSRAN-Z can be held responsible for the actions of Investa, the Court will deny Plaintiff's Motion for Summary Judgment against GSRAN-Z.

The Court wholly rejects Defendants' arguments that Plaintiff had the burden of stopping the foreclosure sale by providing the Sheriff with a copy of the Reinstatement Order.  The law is clear that debtors are not charged with a duty to enforce the automatic stay or ensure a creditor's compliance.  *See, e.g., Jove,* 92 F.3d at 1558 ("This attempt to burden debtors with policing [creditor]'s misconduct is a complete derogation of the law. . . .  [W]hether [debtor] could have remedied the violations with a phone call . . . is irrelevant in determining whether [creditor] is in contempt for violating the automatic stay.").  In any event, the only evidence before the Court, which again is undisputed except as to relevance, shows that Plaintiff did try to stop the foreclosure proceeding by calling the Sheriff and Investa.

Having established that Investa had a duty to stop the foreclosure process after the Reinstatement Order, the only conclusion to be drawn from the evidence before the Court is that Investa did nothing to stop the First Notice, the Second Notices, and the May Advertisement as

each of those things in fact occurred, and Investa neither argues nor offers any evidence that it tried to stop the violative acts or was somehow prevented from taking action to stop the violative acts. Investa relies completely on the misplaced argument that it had no duty to act. Given the lack of evidence showing Investa took, or was prevented from taking, any action to stop the violative acts, the Court concludes that Investa's failure to stop the First Notice, Second Notices, and the May Advertisement was each an intentional act if it had actual knowledge of the Reinstatement Order in enough to time to stop each act.

*i. Defendants Are Presumed to Have Had Actual Knowledge of the Stay*

Defendants acknowledge they received a copy of the Reinstatement Order via mail, though they have not acknowledged when they in fact received such notice. The evidence, however, is clear that the Clerk of Court served a copy of the Reinstatement Order on Defendants no later than March 16, 2019. Defendants do not dispute that the addresses served were correct or contend that they did not receive the Reinstatement Order until after the violative acts.[6] "There is a presumption that a letter that is properly addressed and placed in the mail will be delivered to the addressee in a timely manner." *In re Hobbs*, 141 B.R. 466, 468 (Bankr. N.D. Ga. 1992) (citations omitted). Although "this presumption is rebuttable[,] [t]he presumption may be rebutted by the production of evidence which '... would support a finding of the non-existence of the presumed fact....' The majority of courts that have considered the presumption of receipt have held that a mere denial of receipt is insufficient to rebut the presumption." *Id*. Not only have Defendants not produced any evidence to support a finding that they did not receive the Reinstatement Order before the First Notice, they do not even deny it. The Reinstatement Order was mailed to Defendants at their

---

[6] GSRAN-Z acknowledged that it received the Reinstatement Order "through" Investa. Again, whether GSRAN-Z's knowledge of the Reinstatement Order created a duty for it to stop the foreclosure process initiated by Investa is unclear from the record and not developed by either party in the pending motions.

14

proper addresses on March 16, 2019.  With the unrebutted presumption that it was delivered timely, the only conclusion to be drawn from the evidence before the Court is that Defendants had actual notice of the Reinstatement Order far in advance of the First Notice.  Accordingly, the Court finds Defendants had actual knowledge of the Reinstatement Order well before the First Notice.

> ii.   *Investa Willfully Violated the Automatic Stay by Failing to Stop the First Notice, Second Notices, and May Advertisement*

Because Investa had actual knowledge of the Reinstatement Order long before the First Notice, Second Notices, and May Advertisements, and because it took no apparent action to stop such acts, the Court finds Investa willfully violated the automatic stay by failing to stop the First Notice, Second Notices, and May Advertisements.

### 4.   Questions of Material Fact Remain as to Damages

It is Plaintiff's burden to establish damages.  *E.g., Mantiplay v. Horne (In re Horne)*, 876 F.3d 1076, 1083 (11th Cir. 2017).  Plaintiff requests three categories of damages: (1) $24,000 resulting from the termination of a lease between Debtor and an individual named Jean Deverze (the "Lease'); (2) emotional distress damages of $100,000; and (3) punitive damages of $250,000. The Court addresses each in turn.

> i.   *Damages for Lease Termination*

Plaintiff argues that he is entitled to summary judgment in the amount of $24,000 because the First and Second Notices caused Deverze to terminate the Lease.  In support of his damage claim, Plaintiff submits his own affidavit, an affidavit of Deverze, and copies of the purported Lease attached to each affidavit.  In sum, the affidavits state that Deverze terminated the Lease after he discovered the First Notice and Second Notices at the Property for fear that he would be evicted following a foreclosure.  Plaintiff argues he is entitled to all lost rent under the Lease following Deverze's termination, which amounts to 32 months of $750 rent payments.

Plaintiff's own evidence, however, raises a number of factual inconsistencies regarding the Lease. For instance, both copies of the Lease attached in Plaintiff's exhibits show a monthly rent payment of $7.50 and a security deposit of $5.00. Plaintiff's affidavit and the Deverze affidavit state the lease payment was $750, but neither addresses whether the Lease contained a typo and whether the deposit amount was correct. Plaintiff has presented no evidence of payments or other documentation to support $750 rental payments. Plaintiff points to his bankruptcy schedules in his Reply to confirm that $750 is the correct amount. Plaintiff indeed filed a bankruptcy schedule on November 19, 2018, showing $750 per month in rental income and another document that same day indicating that his income "is or will be from a rental unit." *See* Bankruptcy Case Doc. No. 1 p. 44 and Doc. No. 5. The Deverze affidavit, however, states that he and Plaintiff agreed on a Lease in mid-December 2018, a month after Plaintiff filed his schedules. Plaintiff also states that he forwarded the Lease to the chapter 13 trustee in his Bankruptcy Case well before he filed claims in this case, but nothing in the record indicates when Plaintiff provided the Lease to the chapter 13 trustee except the unverified statement in Doc. No. 80 in the Bankruptcy Case that the chapter 13 trustee requested proof of income in January or February of 2019. While Plaintiff did file an email from the chapter 13 trustee's office dated August 15, 2019 that purports to attach a copy of the Lease, the lease is not attached to the filed document, and the email does not state when the chapter 13 trustee received the Lease. *See* Bankruptcy Case Doc. No. 80, p. 18.

Other inconsistencies regarding the Lease and the timeline of events appear in the record. The Complaint states the Lease was for five years instead of three. Plaintiff seeks rent for May of 2019 as part of his damages, but Deverze remained in the Property until the end of May (though Plaintiff states Deverze did not pay after April). Plaintiff's affidavit states that Mr. Deverze confronted him on or about May 1, 2020 to inform him that he would be moving out by the end of

Case 19-05201-jwc    Doc 38    Filed 04/01/20    Entered 04/01/20 15:34:17    Desc Main
Document      Page 17 of 25

May, 2019, but Plaintiff filed the Complaint on April 30, 2019 and alleged that Mr. Deverze had already informed him of his intention to move out at that time. Small inconsistencies add up, and Plaintiff can clear up any doubts regarding the Lease at trial, including why Plaintiff should be entitled to all future payments on the Lease with no present value discount.[7]

### ii.  *Emotional Distress Damages*

Plaintiff requests emotional distress damages in the amount of $100,000. Eleventh Circuit precedent establishes that "emotional distress damages fall within the broad term of 'actual damages' in § 362(k)," but cautions "that not every willful violation of the stay merits compensation for emotional distress and that a standard governing such claims is necessary." *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1271 (11th Cir. 2014). "[A]t a minimum, to recover 'actual' damages for emotional distress under § 362(k), a plaintiff must (1) suffer

---

[7] Plaintiff submitted the affidavit of Nathan Ohuche to demonstrate Plaintiff's inability to rent the Property at any time during the remainder of the three-year Lease term. While it is not necessary to consider the merits of the Ohuche affidavit at this time given other issues discussed above, Defendants object to the Ohuche affidavit as an inadmissible expert report because Mr. Ohuche has not been qualified as an expert, and Plaintiff did not disclose him as an expert. Defendants do not provide any evidence that Plaintiff never disclosed Mr. Ohuche as an expert (unsupported statements in a motion are not evidence), but the Court agrees that Mr. Ohuche's affidavit does not establish that he is qualified as an expert on the matters set forth in the affidavit. *See* Fed. R. Ev. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise . . ."). The Ohuche Affidavit provides only the following regarding his qualifications:

> For just over a decade I have operated my real estate sales and investment company, City Condo Homes, LLC, a Georgia corporation. I am involved in residential and commercial real estate leasing as well. I have worked with a number of other companies and real estate investors in developing, financing, selling and leasing single family residences and apartments and condominiums in and around the metro Atlanta area as well as commercial spaces. I have acquired considerable experience and expertise in the area during my career and participation in the real estate industry.

The only thing that is certain from this statement is that Mr. Ohuche has operated "a real estate sales and investment company" for just over a decade. It is unclear what that company does or how it relates to the issues relevant in this case. The rest of the statements are vague and generalized references to other experience but contain no reference to any specific periods of time, companies worked for, transactions in which Mr. Ohuche has participated, or any specific expertise in analyzing residential leasing trends or data. Mr. Ohuche may very well be qualified, but the affidavit does not establish his qualification as an expert. Further, the Ohuche affidavit relies on several charts and photographs contained therein that are illegible due to poor copy quality, and the Court does not find much of the affidavit particularly helpful as a result. Plaintiff, however, may be able to establish and present Mr. Ohuche as an expert at trial, subject to any objections that may be raised by Defendants regarding admissibility, including whether he was properly disclosed as an expert.

significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the automatic stay. *Id.* Plaintiff fails to satisfy at least the second prong of this test for purposes of his Motion for Summary Judgment.

Plaintiff fails to provide any corroborating evidence to support his emotional distress claims, such as medical evidence or non-expert testimony from family members, friends, or co-workers. *See Dawson v. Washington Mutual Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1149-50 (9th Cir. 2004) (cited favorably by the Eleventh Circuit in *Lodge*). Instead, Plaintiff relies solely on his own affidavit, which normally does not clearly establish significant emotional distress. *See Lodge,* 750 F.3d at 1272 (upholding summary judgment in favor of defendant where plaintiffs failed to provide any corroborating evidence in support of emotional damages and relied solely on plaintiffs' affidavits). "Corroborating evidence may not be necessary to prove emotional distress where the violator engaged in egregious conduct and significant emotional distress is readily apparent," *id.,* but the record before the Court on summary judgment does not establish that a reasonable finder of fact could not return a verdict in favor of Defendants on this point. No matter how vigorously Plaintiff argues that Defendants' conduct is egregious, the unique circumstances of this case—a dismissal followed by a reinstatement with a foreclosure process initiated in between and conducted by a third party—could lead a reasonable finder of fact to determine, after weighing all evidence at trial, that Defendants' conduct was not egregious even though a willful violation of the stay occurred. Further, whether Plaintiff has suffered significant emotional distress that is "readily apparent" is better left for a determination after weighing all evidence at trial, when the finder of fact will have the opportunity to hear live testimony from Plaintiff and possibly others instead of relying on the impassive pixels of an electronically filed affidavit.

In any event, there is no basis in the record on which the Court could conclude that $100,000 is an appropriate measure of damages for Plaintiff's emotional distress.  Plaintiff gives nothing in the way of evidence or argument to decipher how he arrived at that number, and any damage amount ultimately awarded is better left to the finder of fact after weighing all the evidence at trial.

       *iii.*    *Punitive Damages*

Punitive damages are available under § 362(k), but only in "appropriate circumstances." "The imposition of punitive damages for a violation of the automatic stay is appropriate when the violator acts in an egregious intentional manner" or "where a violator's acts are egregious, malicious, or accompanied by bad faith."  *In re Roche*, 361 B.R. at 624 (citations omitted).  When determining whether punitive damages are appropriate, "[c]ourts rely on a variation of the following factors:  (1) the nature of the defendant's conduct; (2) the nature and extent of the harm to the plaintiff; (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor."  *Id.*  Given the other factual issues discussed above, whether punitive damages are appropriate in this case will be left for the finder of fact at trial after weighing all the evidence.

In sum, the Court will grant Plaintiff's Motion for Summary Judgment in part and deny it in part.  Summary judgment will be granted on Plaintiff's claims for willful violation of the stay against Investa but denied on Plaintiff's claims for willful violation of the stay against GSRAN-Z. Summary Judgment will be denied on all issues related to damages, which are reserved for trial.

### D.  <u>Defendant's Motion for Summary Judgment</u>

Defendants move for summary judgment on all three claims asserted in the Complaint:  (1) willful violation of the stay, (2) violations of the FDCPA, and (3) state law negligence claims.  The

Court addresses each claim in turn.

      1.  <u>Defendants Are Not Entitled to Summary Judgment on the Stay Violation
Claims</u>

In the Defendants' Motion for Summary Judgment, Defendants rely primarily on the position that they committed no stay violation because it was the Sheriff that tacked the First Notice, mailed the Second Notices, and caused the May Advertisement. As discussed above, this position lacks merit and is rejected by the Court. Investa had a duty to stop the foreclosure process once it became aware of the Reinstatement Order, and the evidence is clear it failed to stop the First Notice, Second Notices, and May Advertisement simply because each act in fact occurred. Further, neither Defendant presented any evidence relative to when they became aware of the Reinstatement Order or that they ever took any action to stop the foreclosure process. By failing to address these issues, the Court has found that Investa willfully violated the stay by failing to stop the First Notice, Second Notices, and May Advertisement. The Court further finds the evidence in the record is sufficient to create a factual issue regarding GSRAN-Z's own duty to stop the foreclosure process and/or its liability through Investa.[8] Defendants are not entitled to summary judgment on the basis that that they took no action in violation of the automatic stay.

Defendants further argue that even if they willfully violated the stay, Plaintiff has not met his burden of establishing any damages, challenging Plaintiff's entitlement to all three categories of damages: Lease damages, emotional distress damages, and punitive damages.

For the Lease, Defendants make three primary arguments: (1) that the Lease itself shows payments of $7.50 per month instead of $750; (2) that Plaintiff is not entitled to all future rents

---

[8] For instance, did Investa's role as "servicer" for GSRAN-Z create a principal/agent relationship? Or did GSRAN-Z have knowledge of the foreclosure process that created an independent duty to stop it? Defendants do not argue that GSRAN-Z is not liable for the acts of Investa or that it had no duty to stop the foreclosure process because it was initiated by Investa, as opposed to its arguments that neither Defendant is responsible for the acts of the Sheriff.

owed under the Lease; and (3) that any damages are the result of Plaintiff allowing Deverze to terminate the Lease instead of Defendants' actions.

To the first point, it is true the Lease shows payments in the amount of $7.50 instead of $750, and Plaintiff has provided no supporting evidence to show Deverze actually paid $750 per month instead of $7.50, but the affidavits of both Plaintiff and Deverze state the monthly payments were for $750, and a reasonable finder of fact could infer $7.50 was a typo.[9]  This is a clear issue of fact that should be addressed at trial and not on summary judgment.

To the second point, even without considering the Ohuche affidavit, Plaintiff has submitted enough evidence through his affidavit to establish an issue of fact as to whether he will be able to rent the Property again and for the same monthly payments.  Plaintiff's affidavit states that he unsuccessfully tried to re-let the Property and offered some detail on his efforts and obstacles in re-letting the Property.  This is another clear issue of fact to be addressed at trial.

 To the third point, whether Deverze had a contractual right to terminate the Lease does not foreclose Plaintiff from establishing that Deverze in fact terminated the Lease as a result of the stay violations and that he is entitled to damages as a result.  Assuming Plaintiff even has viable claims against Deverze, it is possible that collection efforts against Deverze would be fruitless. Whether Plaintiff should have allowed Deverze to terminate the Lease without taking some action to collect may go to the quantum of damages, but it does not foreclose entitlement to damages. This is another clear issue of fact to be addressed at trial.

In short, Plaintiff has submitted sufficient evidence to create a factual issue of damages related to the Lease.  The Court makes no findings relative to the Lease and reserves all issues for trial.

---

[9] Plaintiff gets the benefit of this inference for purposes of Defendants' Motion for Summary Judgment, but Defendants get the benefit of an opposite inference for purposes of Plaintiff's Motion for Summary Judgment.

As to emotional distress damages, although Plaintiff has not submitted any corroborating evidence regarding his emotional distress, Defendants' apparent failure to take any action to stop the foreclosure process could lead a reasonable finder of fact to make a determination that Defendants' conduct was egregious after weighing all the evidence, and Plaintiff's affidavit is sufficient to at least create an issue for trial regarding emotional distress damages. The Court makes no findings relative to emotional distress damages and reserves all issues for trial.

As to punitive damages, whether Defendants' conduct in this case was egregious enough to warrant punitive damages will be left for the finder of fact at trial, and the Court makes no findings relative to punitive damages, reserving all issues for trial.

Even though significant factual issues remain regarding all three categories of damages as discussed above, Plaintiff has nonetheless produced enough evidence for each category to proceed to trial. Defendants are not entitled to summary judgment on damages.

## 2.   Defendants Are Entitled to Summary Judgment on the FDCPA Claims

Defendants argue they are entitled to summary judgment on Plaintiff's FDCPA claims because, among other reasons, the *ad valorem* taxes and solid waste fees are not "debts" under the FDCPA. Defendants cite to *Beggs v. Rossi*, 145 F.3d 511, 512 (2d. Cir. 1998) and *Boyd v. J.E. Roberts Co. Inc.*, 765 F.3d 123, 126 (2d. Cir. 2014) for the proposition that *ad valorem* taxes and mandatory water and sewer charges against property are not "debts" under the FDCPA because they involve no "transaction" as that term is understood in the FDCPA. "Rather, the relationship between plaintiffs and the City with respect to such charges is akin to 'taxpayer and taxing authority,' and 'does not encompass that type of *pro tanto* exchange which the statutory definition envisages.'"  *Boyd,* 765 F.3d at 126 (citing *Beggs,* 145 F.3d at 512). Plaintiff failed to respond to Defendants' motion on the FDCPA claims, and the Court agrees that the taxes and fees are not

debts as contemplated by the FDCPA. *See Williams v. Jenkins County Tax Comm'r*, Civil Action No. 1:11-CV-3089-CAP-JSA, 2012 WL 13009222 (N.D. Ga. Dec. 21, 2012) (approved and adopted by *Williams v. Jenkins County Tax Comm'r*, Civil Action No. 1:11-CV-3089-CAP, 2013 WL 12246580 (N.D. Ga. March 12, 2013) (finding county *ad valorem* real property taxes are not debts under the FDCPA). The Defendants' Motion for Summary Judgment will be granted on the FDCPA claims.

### 3. Defendants Are Not Entitled to Summary Judgment on the State Law Negligence Claims

Plaintiff's Complaint includes a claim for state law negligence against Defendants for breaching their duty not to take collection efforts against Plaintiff while he was a debtor in bankruptcy. Plaintiff alleges Defendants committed negligence *per se* by violating § 362(a) and that he is entitled to damages for his economic losses and mental and emotional distress. The negligence claim is derivative, dependent, and duplicative of Plaintiff's willful stay violation claim because the basis of the claim is that Defendants violated the automatic stay. Likewise, Defendants' arguments on the negligence claim are duplicative of their arguments on the willful stay violation claim—*i.e.*, that Defendants had no duty to stop the foreclosure process and that the Sheriff, not Defendants, committed the stay violations. The Court rejects Defendants' arguments for purposes of the negligence claims for the same reasons it rejected them for the willful stay violation claims. Whether Plaintiff may assert any claims or damages based on state law negligence claims that would not be subsumed or preempted by the willful stay violation claims is unclear, but the Court discerns no basis in Defendants' motion to dismiss the state law negligence claims other than the misplaced arguments that they had no duty to stop the foreclosure and committed no stay violation. The Court will, therefore, deny Defendants' Motion for Summary Judgment on the negligence claims.

23

IV.   <u>**CONCLUSION**</u>

Investa had a duty to stop the First Notice, Second Notices, and May Advertisement once it had actual knowledge of the Reinstatement Order.  Plaintiff has established that Investa willfully violated the automatic stay by failing to stop the First Notice, Second Notices, and May Advertisement, and Defendants offer no evidence to the contrary.  Whether GSRAN-Z also had a duty to stop the foreclosure or whether it may be held liable through Investa is reserved for trial.  The Court makes no findings relative to any damages asserted by Plaintiff, and all issues related to damages are reserved for trial.  Defendants are entitled to summary judgment on the FDCPA claims but not the claims for willful violation of the stay or state law negligence claims.  Therefor it is hereby,

**ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.**  Plaintiff is entitled to summary judgment that Investa willfully violated the automatic stay.  Plaintiff is not entitled to summary judgment that GSRAN-Z willfully violated the automatic stay.  Plaintiff is not entitled to summary judgment for any damages.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.  Defendants are entitled to summary judgment on the Second Claim for Violation of the FDCPA but are not entitled to summary judgment on the First Claim for Willful Violation of the Automatic Stay or the Third Claim for Negligence.

**IT IS FURTHER ORDERED** that the Motion to Strike and the Request for Oral Argument are hereby **DENIED**.

By separate order the Court will schedule a telephonic status conference to discuss pre-trial matters for all issues remaining to be tried.

The Clerk of Court is directed to serve a copy of this order on Plaintiff, Defendants, Defendants' Counsel, and the Chapter 13 Trustee.

END OF DOCUMENT